[No. D025143. Fourth Dist., Div. One. Nov. 25, 1998.]

LINDA F. CROUSE et al., Plaintiffs and Appellants, v.
BROBECK, PHLEGER & HARRISON, Defendant, Cross-defendant and Respondent;
DAVID C. BOATWRIGHT, Defendant, Cross-complainant and Appellant;
PAGE, POLIN, BUSCH & BOATWRIGHT, Cross-complainant and Appellant.

[No. D026136. Fourth Dist., Div. One. Nov. 25, 1998.]

LINDA F. CROUSE et al., Plaintiffs and Appellants, v.
PAGE, POLIN, BUSCH & BOATWRIGHT et al., Defendants and Respondents.

1514

1518

## COUNSEL

Casey, Gerry, Reed & Schenk and T. Michael Reed for Plaintiffs and Appellants.

Post, Kirby, Noonan & Sweat, David J. Noonan and Charles T. Hoge for Defendant, Cross-defendant and Respondent.

Donald P. Tremblay, J. Daniel Holsenback and Jonathan R. Flora, for Defendant, Cross-complainant and Appellant.

Haight, Brown & Bonesteel, Roy G. Weatherup, Jay T. Thompson and Jon M. Kasimov for Cross-complainant and Appellant and for Defendants and Respondents.

## OPINION

**McDONALD, J.**—In these consolidated appeals we examine the application of the legal malpractice statute of limitations continuing-representation tolling provision to a legal malpractice action against a law firm, a former partner of the law firm who represented the client while a partner of the law firm and after becoming a partner in a new firm, and the new firm. We also consider (1) the application of the statute of limitations to cross-complaints for equitable indemnity filed by the attorney and his new firm against his former firm, (2) the limitations on equitable indemnity rights of the attorney and his new firm against the former firm and (3) the doctrines of implied contractual duty, fiduciary duty and statutory duty owed by a law firm to its members.

Appellants Linda F. Crouse and Linda F. Crouse Trust (together Crouse) filed this legal malpractice action against David Boatwright (Boatwright), an attorney who had represented her in a business transaction, and the two law firms in which Boatwright practiced during the times of the alleged acts of malpractice. Prior to 1990 Boatwright was an associate and partner in Brobeck, Phleger & Harrison (BPH). Between March 1990 and mid-October 1993 Boatwright was a partner in Page, Polin, Busch & Boatwright (Page).

BPH cross-complained for indemnity against Boatwright, and Page and Boatwright cross-complained for indemnity against BPH. Boatwright's cross-complaint against BPH also pleaded claims for breach of implied contract and breach of fiduciary and statutory duties.

The trial court granted BPH's motion for summary judgment on Crouse's complaint against BPH, finding that Crouse's action for BPH's malpractice prior to 1990 was time-barred by the statute of limitations. The trial court also granted BPH's motions for summary judgment on Boatwright's and Page's cross-complaints against BPH. BPH dismissed its cross-complaint against Boatwright.

The trial court granted Boatwright's and Page's motions for summary judgment on Crouse's complaint against Boatwright and Page, finding that Crouse's actions for Boatwright's malpractice prior to and after 1990 and Page's malpractice after 1990 were time-barred by the statute of limitations.

In these appeals Crouse argues the summary judgments in favor of BPH, Boatwright and Page on her complaint were error; Boatwright and Page argue the summary judgments in favor of BPH on their cross-complaints were error.

I

FACTS

On appeal from summary judgments, we view the facts and inferences reasonably drawn from those facts most favorably to the respective appellants.

A. *The Sale of Crouse's Partnership Interest*

During the 1980's Crouse was a limited partner in a limited partnership known as Med-Trans. In 1987 Crouse retained BPH to advise and assist her in the sale of her limited partnership interest in Med-Trans to its general

partners. Boatwright was the BPH attorney principally responsible for representing Crouse in the sale. At the end of December 1988 Crouse's sale of her limited partnership interest closed and in consideration she received a promissory note for $7,250,000 (the note), which was all due and payable in September 1990. Boatwright did not deliver the note to Crouse at the sale closing and did not take action to assure that the note would be held in a secure location.

### B. *Boatwright Changes Firms*

Boatwright left BPH in August 1989. In March 1990 he became a partner in Page. BPH continued to represent Crouse with respect to the Med-Trans sale and the note until March 1990.

### C. *The Aborted Restructuring*

In early 1990 Crouse learned the obligors on the note wished to renegotiate the terms of the note. Crouse consulted Boatwright in the spring of 1990 about negotiating a restructuring of the terms of the note, and then retained Page and Boatwright to represent her in those negotiations. BPH, at Crouse's request, transferred her Med-Trans file to Page in April 1990.

Crouse told Boatwright during an April 1990 meeting that she did not have the note. The Crouse file transferred from BPH to Page in April did not include the note. In May Crouse again told Boatwright she could not find the note, and Boatwright told her to "[p]ut it on the back burner."

During the spring and summer of 1990, Boatwright and Page negotiated a restructuring of the terms of the note. Under the restructured note, Crouse was to receive in exchange for the note $6,250,000 in cash and a new $1 million note payable 18 months after the note-restructuring closing scheduled for September 25, 1990.

During the six months prior to the scheduled closing of the note restructuring, Boatwright took no steps to locate the note. On the date scheduled for closing, Boatwright was aware he did not have the note. He had not contacted BPH about the missing note. He had not assessed the legal significance on the closing, or evaluated the alternatives that might be available to Crouse, if the note could not be found and delivered to the note obligors.

At the closing, Ms. Eisner, the attorney for the note obligors, demanded surrender of the note. Because Crouse was unable to produce the note,

Eisner aborted the closing. Eisner believed that the note was negotiable and unless the note obligors obtained possession of the note in exchange for the $6,250,000 cash payment and the new $1 million note, a holder in due course of the note would be entitled to demand payment of the note from the note obligors at a later date.

## D. *The Final Restructuring*

A few days after the aborted closing, Boatwright negotiated a different note-restructuring agreement pursuant to which Crouse was to receive $5 million in cash to be held in escrow for one year, and a new $2.5 million note (the new note). This restructuring agreement closed October 12, 1990, without surrender of the note to the note obligors.

## E. *Crouse Learns of Malpractice Claim*

By mid-October 1990 Crouse had been advised by independent attorneys that the loss of the note was negligence and that Page and Boatwright had been negligent during the spring and summer of 1990 in connection with the restructuring of the terms of the note by not searching for the note, not explaining to Crouse the significance of producing the note, and not making alternative arrangements in lieu of producing the note, at the closing of the note-restructuring transaction.

## F. *Boatwright's Continued Involvement With Crouse*

Boatwright and Page continued to represent Crouse until July 1993 in collecting the escrowed proceeds from the restructured-note transaction and amounts due under the new note, including negotiating a discounted payoff of the new note.

## II

## PROCEDURAL HISTORY

Although Crouse's action for legal malpractice against BPH, Boatwright and Page was filed in August 1994, the relevant date of filing the action for statute of limitations purposes is December 1993 in accordance with a statute of limitations tolling agreement entered into by Crouse, BPH, Boatwright and Page. Page and Boatwright cross-complained against BPH for equitable indemnity. Boatwright's cross-complaint against BPH also alleged that BPH owed Boatwright certain implied contractual, fiduciary and statutory duties as a former partner, and that BPH had breached those duties.

BPH moved for summary judgment against Crouse, arguing that the statutes of limitation on her claim against BPH for negligence in losing the note began running in October 1990. BPH argued that because it had ceased representing Crouse by April 1990, there was no basis for tolling the statute of limitations on her claim against BPH and her claim was therefore barred by the one-year statute of limitations, which expired in October 1991, more than two years before the effective date of Crouse's action against BPH. The trial court granted the motion, reasoning there was no tolling against BPH because BPH had ceased representing Crouse by April 1990. The trial court granted Boatwright's motion to join in BPH's motion for summary judgment for the time period in which Boatwright was a partner at BPH.

Page and Boatwright then moved for summary judgment or judgment on the pleadings against Crouse, asserting that (1) claims against Boatwright based on negligence while at BPH were time-barred under the prior ruling for summary judgment in favor of BPH and Boatwright, and (2) Crouse's complaint did not allege and Crouse had no evidence that Boatwright and Page had been negligent during their representation of Crouse after April 1990. Crouse opposed the motions and submitted evidence that she had notified Boatwright in the spring of 1990 that the note was missing but Boatwright did nothing to find the note prior to the aborted closing on September 25, 1990. She also filed a declaration from an expert, originally retained by BPH, who opined the note was not a negotiable instrument and Boatwright should have recognized that it was not a negotiable instrument and determined that it was therefore unnecessary to surrender the note to close the original note-restructuring transaction. The court sustained evidentiary objections to the expert's declaration and granted Boatwright's and Page's motions. Although Boatwright and Page raise several arguments in support of the judgment, the principal issue is whether Crouse's action was barred by the statute of limitations applicable to attorney malpractice actions. Unless tolled, the statutes of limitation on Crouse's cause of action started running in October 1990 and the effective date of her action is December 1993. The timeliness of her action depends on the applicability of the tolling provision of Code of Civil Procedure[1] section 340.6, subdivision (a)(2), which tolls the statute of limitations while the attorney "continues to represent the [client] regarding the specific subject matter in which the alleged wrongful act or omission occurred."

BPH also sought and obtained summary judgment on the cross-complaints of Boatwright and Page by serial motions for summary adjudication. BPH first sought summary adjudication on the causes of action for breach of

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise specified.

implied contract and breach of fiduciary duty asserted against BPH by Boatwright's cross-complaint. The court granted that motion. BPH then sought summary adjudication on the equitable indemnity causes of action asserted against BPH by Boatwright and Page, and summary adjudication on Boatwright's remaining cause of action against BPH for breach of statutory duty. The court granted these motions and entered judgments in favor of BPH on the cross-complaints.

## III

### STANDARD OF REVIEW

■ The purpose of summary judgment is to penetrate through pleadings to ascertain, by means of affidavits, the presence or absence of triable issues of material fact. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) The trial judge determines whether triable issues of fact exist by examining the affidavits and evidence, including any reasonable inferences which may be drawn from the facts. (*People* v. *Rath Packing Co.* (1974) 44 Cal.App.3d 56, 61-64 [118 Cal.Rptr. 438].) The evidence of the moving party is strictly construed and the evidence of the opposing party liberally construed. Doubts as to the propriety of granting the motion must be resolved in favor of the party resisting the motion. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

When the motion for summary judgment is supported by affidavits sufficient to sustain the motion, however, the burden of showing that triable issues exist shifts to the party opposing the motion. (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) A party cannot avoid summary judgment based on mere speculation and conjecture (*Pena* v. *W. H. Douthitt Steel & Supply Co.* (1986) 179 Cal.App.3d 924, 931 [225 Cal.Rptr. 76]), but instead must produce admissible evidence raising a triable issue of fact. (*Craig Corp.* v. *County of Los Angeles* (1975) 51 Cal.App.3d 909, 915 [124 Cal.Rptr. 621].)

On appeal from an order granting summary judgment, we examine the facts presented to the trial judge and independently determine their effect under the above principles. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)

## IV

### CROUSE'S CLAIMS AGAINST BOATWRIGHT AND PAGE

*Analysis*

Boatwright represented Crouse during two time periods: the original representation while at BPH prior to 1990 and the second representation while at Page starting in March 1990. Although Boatwright's alleged malpractice liability could be premised on negligence occurring in either period, Page's malpractice liability is limited to negligence occurring during the period of representation while Boatwright was a partner in Page. We therefore analyze separately Crouse's claim against Boatwright for malpractice while at BPH (loss of the note) and Crouse's claims against Page and Boatwright for malpractice while Boatwright was a partner in Page (failure to search for the note and to determine and advise Crouse of the significance of the loss of the note to close the note-restructuring transaction, and failure to arrange an alternative to surrender of the note at the closing).

### A. *Crouse's Claim Against Boatwright While at BPH*

 We first examine whether Crouse's claim against Boatwright for alleged negligence in connection with loss of the note while at BPH is barred by the statute of limitations.

#### 1. *Crouse's Appellate Challenge to the Propriety of the Ruling in Favor of Boatwright Is Preserved*

 Boatwright contends Crouse waived any argument that the statute of limitations had not run on her claim of Boatwright's malpractice while at BPH based on loss of the note. Boatwright's waiver claim is based on the peculiar procedural posture of this case. BPH's summary judgment motion against Crouse argued that the statute of limitations on her negligence claim against BPH for losing the note began running in October 1990. BPH argued that because it ceased representing Crouse in April 1990 when it transferred Crouse's file to Page, there was no basis under section 340.6, subdivision (a)(2) for further tolling the statute of limitations on her claim against BPH and therefore her action against BPH effectively filed in December 1993 was barred by the statute of limitations. The trial court granted the motion, reasoning there was no tolling against BPH after April 1990 because at that time BPH had ceased representing Crouse.

Boatwright joined in BPH's motion. Crouse did not initially object to Boatwright's joinder in BPH's motion but later objected to the joinder by a

motion for reconsideration. The trial court apparently overlooked the fact that the basis for ruling in BPH's favor was cessation of representation of Crouse, a fact not applicable to Boatwright. Instead, the trial court granted Boatwright's motion for joinder in the motion for summary judgment by BPH for the time period in which Boatwright was a partner at BPH.

Boatwright argues Crouse's initial failure to object to the joinder precludes Crouse from contesting the ruling that granted partial summary judgment in favor of Boatwright based on the statute of limitations. ■■■ Even assuming the ruling can be considered a permissible grant of partial summary judgment,[2] the propriety of that ruling may be reviewed on appeal from the final judgment. (*Jennings* v. *Marralle* (1994) 8 Cal.4th 121, 128 [32 Cal.Rptr.2d 275, 876 P.2d 1074] [order granting summary adjudication of certain claims reviewable on appeal from the final judgment in the action].) ■ Crouse's motion for reconsideration was adequate to preserve her appellate claim that Boatwright's joinder in BPH's motion for summary judgment is not determinative as to Boatwright on the statute of limitations issue. (§ 647.)

2. *The Statute of Limitations Was Tolled Against Boatwright*

■ The parties agree Crouse's cause of action arose in October 1990 when she was damaged and learned from independent attorneys of her claim for malpractice. ■ ■ ■ Boatwright concedes that, because of the tolling agreement, the operative date of this action for statute of limitations purposes is December 1993.[3] ■ Crouse contends that under section 340.6, subdivision (a)(2) the statute of limitations was tolled until July 1993

---

[2]The ruling would appear to be a nullity. Nothing in the summary judgment statute allows a single cause of action alleging legal malpractice to be separated into component acts with separate statutes of limitations running on each discrete act. When a cause of action for malpractice alleges a single injury, the fact that the attorney's course of conduct involved discrete negligent acts or omissions does not create separate causes of action with a separate statute of limitations for each act or omission. (Cf. *Panos* v. *Great Western Packing Co.* (1943) 21 Cal.2d 636, 638 [134 P.2d 242] [where single injury alleged, different acts of negligence contributing to injury do not create separate causes of action].) Boatwright relies on *Lilienthal & Fowler* v. *Superior Court* (1993) 12 Cal.App.4th 1848 [16 Cal.Rptr.2d 458] to support his argument. However, in *Lilienthal*, separate statutes of limitations ran on different claims for malpractice because the claims arose from different services provided at different times involving separate and distinct unrelated transactions. (*Id.* at p. 1850.)

[3]Page argues on appeal that the tolling agreement is ineffective to toll any statute of limitations as to Page's liability because the tolling agreement was signed by Boatwright individually and not by David Boatwright, a professional corporation (A.P.C.) Page asserts the statute of limitations therefore expired for claims against David Boatwright A.P.C. From this premise, Page argues that (1) Page is liable only to the extent its partners are liable; (2) David Boatwright A.P.C., but not Boatwright individually, was a partner in Page; and (3) the expiration of the statute of limitations as to claims against David Boatwright A.P.C. insulates

because Boatwright continued representing her on the Med-Trans matter until July 1993. Section 340.6 provides in relevant part: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] . . . [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred; . . . ."

Boatwright argues that the continuing-representation tolling provision in section 340.6, subdivision (a)(2) tolls the limitations period only when two conditions are met: (1) the continuing representation must be by the attorney who was negligent; and (2) the continuing representation must be on the same specific subject matter as to which the alleged negligence occurred. Boatwright argues that neither condition is present here and therefore the tolling provision of section 340.6, subdivision (a)(2) does not apply to Crouse's malpractice claim against him for loss of the note while at BPH. Boatwright does not contend there was a time gap in his representation of Crouse that would make inapplicable the continuing-representation tolling provision. (See *Foxborough* v. *Van Atta* (1994) 26 Cal.App.4th 217, 229 [31 Cal.Rptr.2d 525].)

### a. There Is a Triable Issue of Fact Whether Boatwright Was the Negligent Attorney Responsible for Losing the Original Note

Boatwright first argues that BPH lost the note after Boatwright had left BPH and he therefore was not negligent in losing the note. However, the facts and inferences viewed most favorably to Crouse show that Boatwright was the attorney principally responsible for the BPH legal work that produced the note and the only BPH attorney present at the December 1988

---

Page from liability on those same claims. Although we have doubts about the merits of Page's argument, we need not reach this contention because Page did not make this argument below. A party may not raise a new theory for the first time on appeal when that newly raised theory involves facts open to controversy but not placed in issue or resolved at trial. (*Canal-Randolph Anaheim, Inc.* v. *J. E. Wilkoski* (1980) 103 Cal.App.3d 282, 289, fn. 5 [163 Cal.Rptr. 30].) Page's new theory involves possibly disputable facts, including whether the parties to the tolling agreement discussed and understood that Boatwright was signing on behalf of himself and any entities he controlled, whether David Boatwright A.P.C. should be bound by alter ego principles, and whether any alleged malpractice by Page involved Page employees other than Boatwright. We conclude Page may not assert this argument for the first time on appeal.

closing. Because the note was not delivered to Crouse and was lost after coming into Boatwright's possession, a trier of fact could conclude Boatwright was responsible, either directly or as a supervisor, for safeguarding the note, and that his act or omission caused the note to be misplaced.

### b. *Boatwright's Later Representation of Crouse Involved the Same Specific Subject Matter*

Although Boatwright does not contest that his representation of Crouse was a continuing representation within the meaning of that term in section 340.6, subdivision (a)(2), he argues his representation of Crouse after October 1990 involved a subject matter different from the subject matter of his representation prior to that date and therefore the statute of limitations tolling under section 340.6, subdivision (a)(2) ended by October 1990. The continuing-representation provision applies only when the continuing representation involves the specific subject matter as to which the negligence occurred, and is not applicable when there is a continuing relationship between the client and the attorney involving only unrelated matters. (*Foxborough* v. *Van Atta, supra,* 26 Cal.App.4th at pp. 228-229.)

Boatwright characterizes the specific subject matter in which the negligence occurred as "representation on the note." From this premise, Boatwright argues tolling applied only so long as he continued to represent Crouse regarding the note, and the note was extinguished by novation in the October 1990 restructuring transaction. Accordingly, Boatwright argues, his further representation of Crouse after October 1990 was on a new and different specific subject matter.

Crouse argues Boatwright represented her on a single specific subject matter: the sale of her limited partnership interest in Med-Trans and the collection of the proceeds of the sale. She points out: (1) the original engagement letter was broadly written to encompass all negotiations and transactions regarding Med-Trans; (2) the bills received for Boatwright's services were often labeled "Med-Trans"; and (3) Boatwright's deposition testimony described his work for Crouse as protecting her right to receive payment for her partnership interest which concluded when the final payment was received in July 1993.

The test for whether the attorney has continued to represent a client on the same specific subject matter is objective, and ordinarily the representation is on the same specific subject matter until the agreed tasks have been completed or events inherent in the representation have occurred. (See *Worthington* v. *Rusconi* (1994) 29 Cal.App.4th 1488, 1496-1497 [35

Cal.Rptr.2d 169].) In *Worthington,* an attorney hired to assist probating an estate allegedly committed malpractice by advising the client, the executrix of the estate, to disclaim her life estate in a home devised to her by the will in exchange for an undivided fractional interest in the home. The client followed that advice, and two years later other heirs sought to remove her as executrix and sell the property. The attorney then advised her regarding distribution of the home from the estate. It was uncontested that the later legal representation involved the same specific subject matter; the issue was whether the representation was continuing. (*Id.* at pp. 1497-1499.)

Although the attorney in *Worthington* had advised the client about a life estate interest in property, and as a result her interest was transformed into a cotenancy, the later advice regarding her transmuted interest was part of the same specific subject matter. ▮ Similarly, although Boatwright advised Crouse about sale of her Med-Trans partnership interest for which she received the note, the fact the note was later transformed into the new note does not make Boatwright's later representation in collecting the new note representation on a different specific subject matter.

In *O'Neill* v. *Tichy* (1993) 19 Cal.App.4th 114 [25 Cal.Rptr.2d 162], the client alleged that his attorneys committed malpractice in advising him in 1977 in connection with a business reorganization. The reorganization resulted in National Labor Relations Board (NLRB) proceedings against the client, which were resolved adversely by an administrative law judge's 1982 determination, affirmed in 1988 by the NLRB. The attorneys represented the client throughout the NLRB proceedings and were not formally discharged until February 1989. The court concluded that " 'so long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representative,' and the statute of limitations is tolled." (*Id.* at p. 121, quoting *Gurkewitz* v. *Haberman* (1982) 137 Cal.App.3d 328, 333 [187 Cal.Rptr. 14].) Under *O'Neill,* when advice or action on a business transaction is negligent, and the attorney continues representing the client to defend or further the positions based on the original advice or action, the continuing representation involves the same specific subject matter. Here, Boatwright continued advising Crouse on matters relating to the original business transaction because he assisted in both restructuring the transaction in 1990 and helping Crouse collect on the new note created as part of the restructured transaction.

A similar approach has been adopted in other states and by legal commentators. In *Lima* v. *Schmidt* (La. 1992) 595 So.2d 624, the attorney assisted in a 1983 transaction in which the client purchased realty; the negligence was not discovering a prior mortgage on the property. In 1985 the attorney

became involved when the mortgage holder began foreclosure proceedings on the acquired parcel and remained involved until 1987 when the foreclosure was completed. The court concluded that the attorney's later efforts, seeking to protect the interests acquired by the client in the original transaction, involved the same subject matter as the 1983 representation. (*Id.* at pp. 630-631.) A leading treatise also states that to qualify as the same subject matter "[t]he activities allegedly constituting continuous representation must relate to the main task or particular undertaking in which the error occurred. . . . [¶] . . . The focus should be on the objectives of the prior retention and whether the present activities fall within those objectives." (2 Mallen & Smith, Legal Malpractice (4th ed. 1996) Statutes of Limitations, § 21.12, p. 824, fn. omitted.) Here, Boatwright's post-1990 actions clearly related to the objectives of the original retention, and involved efforts to protect the interests Crouse had acquired in the original transaction.

Boatwright relies on *Foxborough* v. *Van Atta, supra,* 26 Cal.App.4th 217 to support his argument that his representation of Crouse after October 1990 was not on the same specific subject matter as before. In *Foxborough*, the attorney's negligence in a 1981 real estate transaction caused his client to lose annexation rights. In 1985 the client discovered the loss and the negligence and rehired the attorney to assist in recouping those rights. The attorney wrote letters in the spring of 1985 unsuccessfully seeking recoupment of the annexation rights. In late 1985 the client hired different counsel to prosecute a suit to recover the annexation rights. Two years later, the client hired the negligent attorney as an expert witness and consultant in the lawsuit. The lawsuit was unsuccessful and the malpractice action was filed in 1990. The court concluded the malpractice statute of limitations began running in 1985, and after a brief tolling in early 1985 when the letters were written, began running again because a different attorney was hired to recapture the lost annexation rights. The court concluded that rehiring of the negligent attorney in 1987 in a different capacity and after the statute of limitations had otherwise run did not toll the running of the statute of limitations. (*Id.* at p. 229.)

*Foxborough* does not support Boatwright's argument because, unlike the *Foxborough* client, Crouse did not rehire Boatwright *after* her claim against him was time-barred. Instead, Boatwright represented Crouse on the same specific subject matter before her cause of action arose and he continued handling the transaction until July 1993. Furthermore, in *Foxborough* the court assumed, without deciding, that the later representation involved the same specific subject matter as the earlier representation. The issue, not present here, was whether the representation was continuing, and the court held that because of the time gap in representation there was no continuing representation. (26 Cal.App.4th at p. 229.)

We conclude that a material issue of fact exists whether Boatwright was the attorney responsible for the loss of the note while at BPH. We further conclude that the undisputed facts show his continuing representation of Crouse through July 1993 involved the same specific subject matter as his representation at the time of the loss of the note. The trial court therefore incorrectly granted summary judgment for Boatwright on the malpractice claim arising from the loss of the note while Boatwright was associated with or a partner in BPH.

## B. *Crouse's Claims Against Page and Boatwright*

■ We next examine whether the trial court properly granted summary judgment or judgment on the pleadings in favor of Page and Boatwright for alleged malpractice while Boatwright was a partner at Page.

### 1. *Procedural Background*

After the trial court ruled that Crouse's malpractice action against Boatwright was time-barred to the extent it was based on the loss of the note, Boatwright, joined by Page, moved for summary judgment or judgment on the pleadings. They argued that Crouse's complaint alleged her damages were caused by loss of the note, and that no negligence was alleged in connection with Boatwright's conduct in the restructuring of the note. They contended that because the lost-note claim was time-barred under the court's prior ruling, and Crouse had no evidence Page or Boatwright committed any other act of malpractice that caused Crouse damage apart from loss of the note, summary judgment for Page and Boatwright was proper.

Crouse opposed the motion, arguing that her complaint alleged she was damaged because of the negligence of Page and Boatwright in not producing the note at the closing, and that evidence showed Boatwright knew the note was missing but made no effort to find it. Crouse also argued that her deposition statements did not preclude additional theories of negligence possibly assertable against Page and Boatwright, and that BPH produced evidence showing that Page and Boatwright were negligent in not recognizing at the aborted closing that the note was nonnegotiable and therefore its surrender at the closing was unnecessary.

Page and Boatwright responded that Crouse could not rely on the allegations of her complaint because they showed Crouse had no evidence of negligence after Boatwright left BPH. Page and Boatwright contend the burden then shifted to Crouse to produce expert testimony evidence of a triable issue of fact that they were negligent while representing Crouse in the spring and summer of 1990.

After the court continued the motion hearing to permit Crouse to conduct additional discovery, Crouse filed supplemental opposition, arguing that it was improper to shift the burden to Crouse to produce evidence of negligence because Page's and Boatwright's motions did not negate negligence by Page and Boatwright, and that even were expert evidence necessary, the expert's declaration that BPH provided showed Page and Boatwright should have recognized but did not recognize the nonnegotiability of the note. The court sustained the evidentiary objections to the expert's declaration and granted Page's and Boatwright's motions for summary judgment.

### 2. The Trial Court Erred in Granting the Motions for Judgment on the Pleadings

Page's and Boatwright's motions were effectively motions for judgment on the pleadings. ■ A motion for summary judgment that argues the pleadings do not support a claim is evaluated as a motion for judgment on the pleadings, and tests whether the complaint is sufficient to state a cause of action. (*Hand* v. *Farmers Ins. Exchange* (1994) 23 Cal.App.4th 1847, 1853 [29 Cal.Rptr.2d 258].) ■ Here, the motions argued Crouse's complaint alleged only that she was damaged by the loss of the note, and that Page and Boatwright had no responsibility for loss of the note. The motions further argued that because there were no allegations of injury apart from loss of the note, summary judgment should be granted.

■ A motion for judgment on the pleadings, like a general demurrer, cannot be granted if the complaint for professional negligence pleads in general terms the basic elements of the cause of action. (*Modica* v. *Crist* (1954) 129 Cal.App.2d 144, 145-146 [276 P.2d 614].) If the complaint alleges what occurred, and generally alleges the acts were negligently done, the complaint need not state the specific act or omission constituting negligent conduct. (*Ibid.*) ■ Here, the complaint alleged Page and Boatwright: ". . . negligently and carelessly handled representation of [Crouse], including but not limited to failing to inform [Crouse] of the legal effect of the note, failing to inform [Crouse] of the adverse consequences if the note were lost, failing to properly maintain, locate and produce the note when requested. . . . [¶] Had [Page and Boatwright] . . . exercised proper care and skill in the foregoing matters, [Crouse] would not have been damaged . . . ."

These allegations adequately alleged negligence subsequent to loss of the note that proximately caused damages. For example, were the note nonnegotiable, the failure to inform Crouse of the legal effect of the note, based on negligent failure to research whether the note was nonnegotiable, caused

Crouse to be unaware that her bargaining position in September 1990 was unaffected by the absence of the note, which ignorance could have contributed to her injury. Alternatively, the allegation that Page represented Crouse beginning in April 1990 but failed to "locate and produce the note when requested" could encompass an allegation that the failure of Page and Boatwright to contact BPH in April to request a search be launched for the missing note was a cause of its nonproduction in September.

To the extent Page's and Boatwright's motions were motions for judgment on the pleadings, the complaint adequately pleaded negligent actions by Page and Boatwright subsequent to the loss of the note and damages resulting from those acts.

### 3. *The Showing Was Insufficient to Permit Entry of Summary Judgment*

Page and Boatwright assert their motions were properly granted as motions for summary judgment because they demonstrated Crouse had no evidence of malpractice during the spring and summer of 1990; this showing, they argue, shifted the burden to Crouse to show a triable issue of fact that Page and Boatwright had been negligent. From this premise, Page and Boatwright argue that Crouse's failure to respond with competent expert testimony showing Page's and Boatwright's actions fell below the standard of care permitted entry of summary judgment for them.

Page and Boatwright's argument rests on the burden-shifting provisions of section 437c, subdivision (o)(2). ■ In *Tibor* v. *Superior Court* (1997) 52 Cal.App.4th 1359, 1368 [61 Cal.Rptr.2d 326] the court stated: "Under the 1992 and 1993 amendments to section 437c, a defendant moving for summary judgment 'has met his or her burden of showing that a cause of action has no merit if that .party has shown that one or more elements of the [plaintiff's] cause of action . . . cannot be established . . . .' (§ 437c, subd. (o)(2).) Once the moving defendant has satisfied this obligation, the burden shifts to the plaintiff to demonstrate a triable issue of material fact as to the existence of the element or elements challenged by the defendant. (*Ibid.*) To do so, the plaintiff may not rely upon the 'mere allegations . . . of its pleadings' and instead must show by 'specific facts' that the requisite triable issue of material fact is present. (*Ibid.*) [¶] Section 437c, subdivision (o)(2) has been interpreted to mean that a defendant seeking a summary judgment now has two means by which to shift the burden of proof under subdivision (o)(2) to the plaintiff to produce evidence creating a triable issue of fact. (*Brantley* v. *Pisaro* (1996) 42 Cal.App.4th 1591, 1598 . . . .) 'The defendant may rely upon factually insufficient discovery responses by the plaintiff to show that the plaintiff cannot establish an essential element of the cause

of action sued upon. [Citation.]' (*Ibid.*) Or, 'the defendant may utilize the tried and true technique of negating ("disproving") an essential element of the plaintiff's cause of action. [Citation.]' (*Ibid.*)"

However, if the showing by the defendant does not support judgment in his favor, the burden does not shift to the plaintiff and the motion must be denied without regard to the plaintiff's showing. (*Nichols* v. *Keller* (1993) 15 Cal.App.4th 1672, 1681-1682 [19 Cal.Rptr.2d 601].)

 Page's and Boatwright's motions for summary judgment did not contain evidence affirmatively disproving or negating an element of Crouse's cause of action. The motions instead relied on the "no evidence" approach, asserting Crouse's deposition answers showed she had no evidence of negligence by Page and Boatwright subsequent to loss of the note. Although it is proper to use deposition answers to show a party has no evidence of a defendant's negligence (*Hunter* v. *Pacific Mechanical Corp.* (1995) 37 Cal.App.4th 1282, 1285-1288 [44 Cal.Rptr.2d 335]), the motions here did not make that showing. Page and Boatwright's separate statement of facts filed in support of their motions asserted Crouse never criticized Boatwright's negotiation of the restructured note. However, the evidence cited by Page and Boatwright does not support the assertion Crouse had no evidence Page and Boatwright were negligent. On the contrary, Crouse's deposition answers cited in Page and Boatwright's separate statement of facts stated that when she told Boatwright in April of the lost note "there should have been a discussion as to the significance of it and [a search] for it." Thus, Crouse did have evidence of negligent acts: in the spring of 1990 Boatwright should have explained but did not explain the significance of the missing note, and Boatwright should have searched for the note in April rather than waiting until after the note-restructuring closing in September was aborted.

Page and Boatwright argue that no expert gave evidence that the above cited omissions breached the duty of care owed by an attorney, and Crouse's failure to produce expert testimony permitted entry of summary judgment.[4] However, the burden-shifting provisions of section 437c, subdivision (o)(2)

---

[4]Page and Boatwright also argue that, even if there were triable issues regarding the existence and breach of these duties, summary judgment was proper because there was no evidence the failure to begin searching in April, or the failure to properly advise Crouse of the significance of the missing note, were contributing causes of injury. Whether a search begun in April might have located the note involves a triable issue of fact. Although BPH's search in October did not produce the note, the note was in fact later found by BPH. A trier of fact might infer the October search, conducted after the restructured agreement had already been aborted and then quickly renegotiated, was conducted without any sense of urgency, but had the search been launched and conducted over a six-month period while possession of the note

do not operate until the moving party first produces affirmative evidence negating the duty's existence, or evidence that Boatwright and Page did not breach the duty of care. (Cf. *Jambazian* v. *Borden* (1994) 25 Cal.App.4th 836, 844-849 [30 Cal.Rptr.2d 768] [plaintiff obligated to provide expert testimony on breach of duty because defendant produced expert evidence negating breach of duty].) Page and Boatwright produced no expert testimony negating the duty of care or breach of duty elements of Crouse's cause of action, and the motion for summary judgment should have been denied even though Crouse did not produce expert testimony. (*Salasguevara* v. *Wyeth Laboratories, Inc.* (1990) 222 Cal.App.3d 379, 386-387 [271 Cal.Rptr. 780].)

We conclude the trial court incorrectly granted summary judgment or judgment on the pleadings in favor of Boatwright and Page for alleged negligence occurring while Boatwright was a partner in Page.

## V
### CROUSE'S CLAIM AGAINST BHP

*Analysis*

It is undisputed that (1) after April 1990 BPH performed no legal services for Crouse in connection with the Med-Trans matter, and Boatwright and Page represented Crouse on that matter; (2) Crouse's cause of action against BPH for negligently misplacing the note arose in October 1990, and her action against BPH effectively commenced in December 1993; and (3) the one-year statute of limitations bars Crouse's action against BPH unless the statute was tolled by the continuing-representation tolling provision of section 340.6, subdivision (a)(2). Crouse's argument on appeal for application of the continuing-representation tolling provision is that, under *Beane* v. *Paulsen* (1993) 21 Cal.App.4th 89 [26 Cal.Rptr.2d 486], Boatwright's continued representation of Crouse tolled the statute of limitations on Crouse's claim against BPH.

 The tolling provision of section 340.6, subdivision (a)(2) applies to both the one-year and the four-year time limitations. (*O'Neill* v. *Tichy, supra,* 19 Cal.App.4th 114, 119-121.) The continuing-representation tolling provision has two purposes: to prevent the attorney from defeating a malpractice action by continuing to represent the client until the statute of limitations has run; and to avoid forcing the client to file a lawsuit that would disrupt the ongoing attorney-client relationship and thereby prevent the negligent attorney from attempting to correct or minimize the error. (*Laird* v. *Blacker* (1992) 2 Cal.4th 606, 618 [7 Cal.Rptr.2d 550, 828 P.2d 691].)

---

remained critical, the note would have been found or creative thinking might have produced alternative courses of action (e.g., an action under Cal. U. Com. Code, § 3804 to recover on a lost instrument), making the need for the note moot.

The continuing-representation tolling provision has been applied with little difficulty where the attorney who continues to represent the plaintiff is the same attorney claiming the bar of the statute of limitations. (See, e.g., *Kulesa* v. *Castleberry* (1996) 47 Cal.App.4th 103 [54 Cal.Rptr.2d 669]; *Worthington* v. *Rusconi, supra,* 29 Cal.App.4th 1488.) However, where the attorney who continues to represent the plaintiff is not the same attorney claiming the bar of the statute of limitations, the courts with one exception have declined to apply the continuing-representation tolling provision. (See, e.g., *Foxborough* v. *Van Atta, supra,* 26 Cal.App.4th 217.)

*Beane* v. *Paulsen, supra,* 21 Cal.App.4th 89 is the only case of which we are aware that applied the continuing-representation tolling provision of section 340.6, subdivision (a)(2) to a claim against an attorney who did not continue representing the plaintiff. In *Beane*, Attorney Vodonick, who was in partnership with two other attorneys, was hired in 1987 to file a state court action on behalf of the client (Tucker) and to prosecute a related proceeding in bankruptcy court. In 1987 the bankruptcy action was dismissed because it was not prosecuted. In 1988 Vodonick's two partners withdrew from their partnership with Vodonick to form their own partnership. Vodonick continued representing Tucker, and in 1989 her state court action was dismissed based on the res judicata effect of the bankruptcy court dismissal. In September 1989 Tucker learned of this adverse result. However, Vodonick continued representing her on appeal until January 1991. (*Id.* at pp. 93-95.)

In the subsequent malpractice suit filed in April 1991 by Tucker against Vodonick and his former partners, the former partners sought summary judgment, arguing they eliminated any vicarious liability for Vodonick's malpractice by dissolving the partnership in 1988 and Tucker's claim against them was time-barred by section 340.6. The *Beane* court concluded the vicarious liability of Vodonick's former partners for Vodonick's malpractice occurring while they were partners survived dissolution of the partnership. (21 Cal.App.4th at p. 97.)

The *Beane* court then addressed whether the action against Vodonick's former partners was barred by the statute of limitations. The *Beane* court first concluded that, because Vodonick continued to represent Tucker until January 1991, the statute of limitations was tolled as to Vodonick until that date and her April 1991 complaint against Vodonick was timely. The *Beane* court then stated at 21 Cal.App.4th pages 98-99: "But what of the [former partners], whose liability is essentially vicarious (or at best passive, in the sense they failed to supervise their partner's handling of the case of their firm's client)? In the trial court's view, the statute of limitations began to run as to *them* on the date of Mrs. Tucker's discovery of the fact of her actual

injury in 1989. We cannot agree. This would place Mrs. Tucker in an extremely awkward position, preserving on the one hand her attorney-client relationship with the active tortfeasor, while chasing his former partners to the courthouse on the other. This would undermine the express legislative intent, since the former partners if sued by September 1990 would immediately file cross-claims against Mr. Vodonick, disrupting the attorney-client relationship. Moreover, as past cases have recognized, the fiduciary nature of the relationship between attorney and client will lull the client into inaction even after the client hears about an adverse result. (*Day* v. *Rosenthal* (1985) 170 Cal.App.3d 1125, 1165-1166 [217 Cal.Rptr. 89].) Indeed, in the very letter informing Mrs. Tucker of the adverse consequences in her federal and state actions, Mr. Vodonick made soothing statements about the likelihood of ultimate vindication . . . , and as late as November 1990 stated, 'we still ha[ve] not heard anything from the appellate court . . . . We deeply want to continue to work for you and believe that you have an excellent case.' How, under these circumstances, Mrs. Tucker was thus to realize she must sue the former partners of this siren is not explained, and we believe it is irreconcilable with her maintenance of the fiduciary relationship with the defendants' former partner. Consequently, tolling for reasons of continuous representation has an 'all for one and one for all' application when one (or more) of several former partners continue to represent the allegedly wronged client."

*Beane* based its "all for one and one for all" conclusion on two considerations, one factual and the other policy-related. The factual consideration was that, because of Vodonick's ongoing fiduciary relationship with Tucker and his "soothing statements about the likelihood of ultimate vindication" (*Beane* v. *Paulsen, supra,* 21 Cal.App.4th at p. 99), Tucker could not be expected to realize she had a claim for malpractice and could be excused for not filing an action against Vodonick's former partners. The policy-based consideration was the recognition that Tucker's right to collect from Vodonick's former partners was based on partnership principles of vicarious liability and that the former partners could seek indemnity from the active tortfeasor Vodonick. A suit by the former partners against Vodonick for indemnity would disrupt Vodonick's fiduciary relationship with Tucker. *Beane,* citing the statutory policy of preserving the ongoing relationship with the active tortfeasor, concluded the interest in preserving Tucker's relationship with Vodonick takes precedence over the former partners' interest in being free from stale claims.

We conclude *Beane* should not be applied here. *Beane's* factual basis— ignorance of the claim because of misleading statements by a fiduciary—is absent here. More importantly, we believe that *Beane's* emphasis on preserving Tucker's ongoing relationship with Vodonick does not sufficiently recognize the purpose of the continuing-representation tolling of the statute of

limitations, and overlooks fundamental tenets of partnership law and the law applicable to waivers of statutes of limitation.

*Beane*'s factual concern was that the ongoing relationship with Vodonick lulled Tucker into inaction because her justifiable reliance on Vodonick's assurances he would restore her lost rights could have created ignorance of her malpractice claim.[5] Unlike Tucker's relationship with Vodonick, Crouse's ongoing relationship with Boatwright did not cause her to be ignorant of the malpractice; she consulted independent counsel, who confirmed she had a claim for malpractice. Moreover, Crouse knew by October 1990 that Boatwright could not restore her lost rights because the originally contemplated note-restructuring was irretrievably lost when the agreement resulting in the new note was concluded. The factual basis of *Beane*'s ruling is not present here.

More importantly, we disagree with *Beane*'s policy analysis. Ordinarily, the right to interpose the statute of limitations as a defense is a privilege personal to the defendant, which he may elect to invoke, and his defense may not be waived without his consent by the conduct or agreements of others with whom he was co-obligated. (*Steiner* v. *Croonquist* (1951) 108 Cal.App.2d Supp. 895, 898-899 [238 P.2d 690] [where debt owed by co-obligors, a waiver of statute of limitations by one co-obligor does not waive defense by other co-obligor]; *Bemer* v. *Bemer* (1957) 152 Cal.App.2d 766, 772-773 [314 P.2d 114] [husband's waiver of statute of limitations defense does not deprive wife of defense where couple was separated and creditor was aware of separation and wife neither signed waiver nor authorized husband to waive on her behalf].) This principle is ignored by *Beane*'s holding that the former partners' right to invoke the statute of limitations defense was waived by the acts of Vodonick even though ordinary partnership principles prevent Vodonick from binding his former partners by agreements entered into or actions taken after dissolution of the partnership. (*Sears* v. *Starbird* (1889) 78 Cal. 225, 229 [20 P. 547]; *Blackmon* v. *Hale* (1970) 1 Cal.3d 548, 560 [83 Cal.Rptr. 194, 463 P.2d 418]; *Williams* v. *Ely* (1996) 423 Mass. 467 [668 N.E.2d 799].)

*Beane* departs from a principle of statutes of limitation waiver that a defendant is not bound by a co-obligor's waiver and from a standard

---

[5]Although *Beane* did not use the nomenclature of "ignorance of the claim," its citation to and reliance on *Day* v. *Rosenthal* (1985) 170 Cal.App.3d 1125 [217 Cal.Rptr. 89] to support its "reliance on fiduciary" analysis convinces us the thrust of this portion of the analysis was based on ignorance of the claim. *Day* specifically concluded that even though a client may become aware of an adverse ruling, the statute of limitations only begins running when the client knows or should know of the essential facts giving rise to a claim for malpractice. *Day* reasoned that when an attorney has an ongoing relationship and assures his client of her ultimate vindication, the fiduciary nature of the relationship permits a client to rely on that advice, and the client's ignorance of the malpractice will be excused. (*Id.* at pp. 1164-1166.)

principle of partnership law that a former partner may not bind former partners after dissolution. *Beane*'s justification for enforcing against the former partners an unconsented-to waiver of the statute of limitations was the necessity to fulfill its perceived purpose of the continuing-representation tolling provision: to benefit the client's interest by preserving undisturbed the client's relationship with his attorney. However, the objective of preserving the client's relationship with the attorney is to give the negligent attorney an opportunity to correct or mitigate his error by continuing to represent the client and avoiding the necessity for an immediate lawsuit. (See Mallen, *Panacea or Pandora's Box? A Statute of Limitations for Lawyers* (1977) 52 State Bar J. 22, 26.) The statutory price for the attorney's availing himself of the continuing-representation benefit is the tolling of the statute of limitations on a malpractice claim against him. The attorney may decline continued representation to preserve the defense, or he may waive the defense by continuing to represent the client.

If, as *Beane* held, the negligent attorney's election to continue the client representation is enforced against his former partners, those former partners pay the statutory price of the tolling of the statute of limitations without any voice in the election *and* without obtaining the statutory benefit of participating in eliminating or minimizing their liability for damages from the negligence. The attorney's election should bind only the attorney himself and those for whom he is authorized to act. His election should not bind parties for whom he is not authorized to act.

We agree with *Beane* that requiring the injured client promptly to sue the former partners may well trigger cross-complaints against the negligent attorney and thereby impede the negligent attorney's ability to remedy or mitigate the damages caused by his error. Although impeding the negligent attorney's opportunity to remedy or mitigate his error is detrimental to him, we believe that this detriment equitably should be borne by the negligent attorney rather than by his former partners. If the attorney who continues to represent the client has liability only vicariously as a former partner of the firm rather than for his own negligence, then *Beane*'s concern about disruption of the attorney-client relationship resulting from the client's suit against the former partners and a cross-complaint by former partners against the nonnegligent attorney would not seem applicable. In that situation the filing of a cross-complaint would be unlikely, and if filed we do not see how the attorney-client relationship would be disrupted or how attempted remediation or mitigation of the client's injury would be impeded.

We decline to follow *Beane* and conclude that under the facts of this case the continuing-representation tolling provision of section 340.6, subdivision

(a)(2) does not apply to Crouse's claim against BPH. The trial court properly granted BPH's motion for summary judgment against Crouse.

## VI

### CLAIMS BY BOATWRIGHT AND PAGE AGAINST BPH

*Analysis*

### A. *Procedural Background*

The cross-complaints by Boatwright and Page against BPH asserted that if Boatwright and Page were liable to Crouse they were entitled to equitable indemnification from BPH. Boatwright and Page assert equitable indemnity claims under *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] (*AMA*), alleging BPH should be required to indemnify them for BPH's proportionate fault in causing Crouse's injury. Boatwright also asserts a statutory indemnity claim under Corporations Code section 15018, subdivision (b), alleging BPH should be required to indemnify Boatwright for liabilities he incurred in the ordinary and proper conduct of BPH's partnership business. Boatwright also asserts claims, labeled breach of fiduciary duty and implied contractual duty, alleging BPH had a policy and practice of defending and indemnifying its current and former attorneys for liabilities its attorneys incurred while acting on behalf of the law firm, and BPH had an implied contractual obligation to defend and indemnify Boatwright against Crouse's claim.

### 1. *BPH's First Motion*

BPH sought summary adjudication on Boatwright's claims that BPH breached its alleged implied contractual and fiduciary duties by refusing to defend and indemnify Boatwright against Crouse's complaint against Boatwright. BPH argued: (1) it owed no duty to indemnify or defend Boatwright for any negligent conduct committed by Boatwright while at Page; (2) there was no evidence supporting an implied contractual duty to indemnify or defend Boatwright for any of Boatwright's liability based on his conduct while at BPH; and (3) even if BPH owed a duty to indemnify or defend Boatwright for his liability based on his conduct while at BPH, that obligation would only arise after the trier of fact concluded Crouse was damaged by Boatwright's negligence while at BPH, and therefore Boatwright's claim was premature. The trial court granted BPH's motion for summary adjudication on Boatwright's claims for breach of implied contractual duty and breach of fiduciary duty.

## 2. *BPH's Second Motion*

BPH then sought summary adjudication on Boatwright's and Page's claims for equitable indemnity and Boatwright's claim for statutory indemnification. BPH argued that the same statute of limitations that barred Crouse's claim against BPH for attorney malpractice also barred Boatwright's and Page's claims for equitable indemnity against BPH and Boatwright's claim for statutory indemnification against BPH. BPH also argued there was no valid equitable indemnity claim, because Boatwright's separate acts of malpractice at Page constituted independent superseding acts rather than acts of a joint tortfeasor, making equitable indemnity unavailable. In opposition, Boatwright and Page argued: (1) the statute of limitations on their equitable indemnity claims was not governed by the statute of limitations applicable to Crouse's claim against BPH; and (2) joint tortfeasor status for equitable indemnity purposes exists when the negligent acts of two parties cause a single injury, whether the negligent parties acted jointly, concurrently or successively. The trial court granted summary adjudication in favor of BPH, concluding that section 340.6 barred all claims for equitable indemnity and statutory indemnification and that Boatwright's and Page's separate malpractice was an independent superseding act eliminating joint tortfeasor status for equitable indemnity purposes.

Because this ruling eliminated all the remaining claims, judgment was entered in favor of BPH against Boatwright and Page.

## B. *Section 340.6 Does Not Bar Claims for Equitable Indemnity*

BPH argued below, and the trial court agreed, that Page's and Boatwright's claims for equitable indemnity under *AMA* were time-barred under section 340.6 because their indemnity claims were not filed within one year after Crouse discovered the malpractice and suffered actual injury. However, a tort defendant's equitable indemnity action is separate and distinct from the plaintiff's tort action against the defendant and does not arise for statute of limitations purposes until the defendant pays a judgment or settlement for which he is entitled to indemnity. Moreover, because the defendant's equitable indemnity claim is independent of the plaintiff's action, the defendant does not lose his right to seek equitable indemnity from another tortfeasor simply because the plaintiff's action against the other tortfeasor may be barred by the statute of limitations; instead, the defendant may pursue his own indemnity action so long as the statute of limitations on the indemnity action has not expired. (*People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744, 751-752 [163 Cal.Rptr. 585, 608 P.2d 673].)

BPH argues that section 340.6 was intended to apply to any action premised on legal malpractice, including actions for equitable indemnity. However, the statute refers only to the time limits for a plaintiff's claim, and makes no mention of either a cross-complainant or claim for equitable indemnity.[6] BPH argues we should interpret section 340.6 as applying to indemnity claims. However, if the Legislature had intended section 340.6 to apply to actions for equitable indemnity, it would have expressed that intent as it has in other statutes of limitation made applicable to both plaintiffs' claims as well as indemnity claims. In section 337.15 the Legislature placed a 10-year limitations period on actions for latent construction defects and expressly defined "actions" to include "an action for indemnity." (§ 337.15, subd. (c).) ▉ When terms are used in some statutes but not in other related statutes, we should not imply the terms into the statute from which they were excluded. (*Pasadena Police Officers Assn.* v. *City of Pasadena* (1990) 51 Cal.3d 564, 576 [273 Cal.Rptr. 584, 797 P.2d 608].)

▉ BPH relies on *Wagner* v. *State of California* (1978) 86 Cal.App.3d 922 [150 Cal.Rptr. 489] to support its argument that section 340.6 applies to indemnity actions. *Wagner* evaluated whether section 337.1, which provides a four-year statute of limitations on patent construction defects, should be applied to bar an indemnity claim. *Wagner* cited in footnote 2 at page 927 the following language of section 337.1: " 'Except as otherwise provided in this section, no action shall be brought . . . more than four years . . . after . . . completion of [the project].' " The *Wagner* court concluded: "Since the limitations period set forth in section 337.1 would preclude any action other than one excepted by that section, it follows that an action for indemnity based on the same events should also be precluded." (86 Cal.App.3d at p. 928.) However, *Wagner* is distinguishable because section 337.1 provides that "no action" shall be brought more than four years after completion "[e]xcept as otherwise provided" by section 337.1; section 340.6 does not contain similar language. Even were *Wagner* not distinguishable, we are convinced this aspect of *Wagner* should not be adopted. *Wagner* reached its conclusion without citing, accommodating or distinguishing the existing Supreme Court authority holding that claims for implied indemnity do not accrue until the indemnitee has suffered actual loss through payment. (See

---

[6]Even if the term "plaintiff" is construed to encompass cross-complainants, our analysis would be unchanged. If Boatwright or Page were deemed a plaintiff subject to the one-year/four-year provisions within section 340.6, he would also be a plaintiff entitled to benefits of its tolling provisions. One provision tolls the limitations period until the plaintiff sustains actual injury. (§ 340.6, subd. (a)(1).) Here, Boatwright or Page will sustain an actual injury only upon payment of a settlement or an adjudication of liability to Crouse, neither of which has yet occurred. Applying section 340.6 to Boatwright and Page as plaintiffs will involve the identical rules of accrual applicable under traditional rules governing accrual of claims for equitable indemnity.

*Sunset-Sternau Food Co.* v. *Bonzi* (1964) 60 Cal.2d 834, 843 [36 Cal.Rptr. 741, 389 P.2d 133]; *E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 506 [146 Cal.Rptr. 614, 579 P.2d 505].) *Wagner's* sole support for its conclusion was citations to *Scheas* v. *Robertson* (1951) 38 Cal.2d 119 [238 P.2d 982] and two out-of-state cases. (*Wagner, supra,* at p. 938.) *Scheas,* however, did not involve an indemnity action; it merely held the Legislature may shorten limitations periods. (*Scheas, supra,* at p. 125.) Because this aspect of *Wagner* relies on inapposite California authority, ignores governing California authority, and has never been subsequently relied on by any other California court, this aspect of *Wagner* appears to be a "derelict on the waters of the law" (*Lambert* v. *California* (1957) 355 U.S. 225, 232 [78 S.Ct. 240, 245, 2 L.Ed.2d 228] (dis. opn. of Frankfurter, J.)) which should not be perpetuated.

Analogous structural differences in statutory language led the same court that decided *Wagner* subsequently to reject application of *Wagner* to a different statute of limitations. In *Mangini* v. *Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125 [281 Cal.Rptr. 827], the court noted the general rule that a tort defendant's indemnity action is not barred merely because the plaintiff's claim is barred by the applicable statute of limitations, and concluded *Wagner* was inapposite because: "It is well settled that, in the absence of a contrary statutory command, a cause of action for equitable indemnity does not come into existence until the indemnitee has suffered loss through payment. [Citations.] . . . [¶] *Wagner* v. *State of California*[, *supra,*] 86 Cal.App.3d 922 . . . , is inapposite. There, this court held that a cross-complaint for equitable indemnity, filed in an action based upon a patent deficiency in real property, was barred by the statute of limitations. (*Id.* at pp. 927-928.) We relied upon the language of Code of Civil Procedure section 337.1, which states in pertinent part, 'Except as otherwise provided in this section, no action shall be brought to recover damages from any person performing or furnishing the design, . . . or construction of an improvement to real property more than four years after the substantial completion of such improvement . . . .' (*Id.* at p. 927, fn. 2.) We concluded that since the statute provided '*No* action' could be brought after four years, and since the statute did not except actions for equitable indemnity from its purview, an action for equitable indemnity had to be brought within the four years from the substantial completion of the improvement. (*Id.* at p. 928.) [¶] Code of Civil Procedure section 337.1 is inapplicable here. Defendant cites no correlative statutory language that would displace the ordinary rule that, 'A tort defendant retains the right to seek equitable indemnity from another tortfeasor even if the plaintiff's action against the cross-defendant is barred by the statute of limitations.' (*Mangini, supra,* 230 Cal.App.3d at pp. 1154-1155, quoting *Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 611 [189 Cal.Rptr. 871, 659 P.2d 1160.)

The other authorities on which BPH relies do not persuade us that section 340.6 is an exception to the ordinary rule permitting the tort defendant to seek equitable indemnity after the statute of limitations barred the plaintiff's action against the cross-defendant. BPH correctly points out that several courts have applied section 340.6 to bar claims for malpractice even though the claims alleged different theories (see *Stoll* v. *Superior Court* (1992) 9 Cal.App.4th 1362 [12 Cal.Rptr.2d 354] [breach of fiduciary duty claim governed by § 340.6]; *Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 425-431 [173 Cal.Rptr. 917], disapproved on other grounds in *Laird* v. *Blacker, supra,* 2 Cal.4th at p. 617 [§ 340.6 applicable to claims sounding in either tort or contract]); however, in all of those cases section 340.6 was applied to bar the plaintiff's claims rather than to bar the cross-complainant's indemnity claim.

We conclude the trial court erred by concluding Boatwright's and Page's cross-complaints against BPH for equitable indemnity were time-barred by section 340.6.

Although we have determined that Page's and Boatwright's cross-complaints against BPH are not time-barred by section 340.6, we must examine whether Page and Boatwright are otherwise entitled to equitable indemnity from BPH. We separately consider Page and Boatwright's claim for indemnity arising out of their post-March 1990 acts and Boatwright's claim for indemnity arising out of pre-1990 acts.

C. · *Boatwright and Page May Seek Equitable Indemnity From BPH for Liability Arising From Boatwright's and Page's Acts of Malpractice Occurring After March 1990*

 The alternative basis for the trial court's grant of summary judgment in favor of BPH was the determination that Boatwright's and Page's separate acts of malpractice after March 1990 were independent superseding acts and not acts of joint tortfeasors with BPH for equitable indemnity purposes.

 Under *AMA* a defendant may ordinarily seek equitable indemnity from another party when the negligent acts of both have combined to cause a single injury to the plaintiff. The right to indemnity from another tortfeasor ordinarily exists whether the negligent defendants acted jointly, concurrently or successively. (*Time for Living, Inc.* v. *Guy Hatfield Homes/All American Development Co.* (1991) 230 Cal.App.3d 30, 40 [280 Cal.Rptr. 904].) In this case, Crouse alleged she suffered an injury—loss of the additional benefits from the aborted note-restructuring agreement—caused

by the acts of malpractice of Boatwright and BPH in misplacing and not safeguarding the note, and thereafter by Boatwright and Page in not acting appropriately when informed of the missing note. Because Boatwright's and Page's equitable indemnity claims allege "that the same harm for which [Crouse] seeks to hold [Boatwright and Page] liable is properly attributable, at least in part, to the acts of [BPH]" occurring prior to March 1990 (*id.* at p. 39), the principles developed under *AMA* would ordinarily permit Boatwright and Page to seek comparative equitable indemnity from BPH for its acts occurring prior to March 1990.

 However, the *AMA* court recognized that a defendant is entitled to equitable indemnity only in "appropriate cases" (*AMA, supra,* 20 Cal.3d at p. 583), and where countervailing considerations are present the defendant will not be entitled to partial comparative equitable indemnity. (*Id.* at p. 607, fn. 9.) Many courts have concluded that "reasons of policy peculiar to the tripartite relationship of attorney-client-adversary override the principle of equitable indemnity." (*Held* v. *Arant* (1977) 67 Cal.App.3d 748, 750 [134 Cal.Rptr. 422].) However, from our examination of those policy concerns we conclude Boatwright and Page as subsequent tortfeasors may, under the facts of this case, seek equitable indemnity from BPH as the initial tortfeasor for liabilities attributable to Boatwright's and Page's acts of malpractice occurring after March 1990.

Numerous courts have concluded that policy concerns preclude a defendant who has injured a client from seeking indemnification from the client's subsequent attorney for malpractice committed while that subsequent attorney represents the client in an effort to rectify or recover for the earlier injury caused by the defendant. (See *Held* v. *Arant, supra,* 67 Cal.App.3d at p. 752 [Pre-*AMA* case holding attorney who commits malpractice cannot seek indemnification from successor attorney representing client in effort to minimize harm or recover for injury]; *Commercial Standard Title Co.* v. *Superior Court* (1979) 92 Cal.App.3d 934, 944-946 [155 Cal.Rptr. 393]; *Gibson, Dunn & Crutcher* v. *Superior Court* (1979) 94 Cal.App.3d 347, 353-356 [156 Cal.Rptr. 326].) Those courts expressed the concerns that the threat of an indemnity suit against the subsequent attorney would create conflicts of interest for the subsequent attorney and difficult problems for him in protecting privileged communications and attorney work product. (See *Copenbarger* v. *International Ins. Co.* (1996) 46 Cal.App.4th 961, 965 [54 Cal.Rptr.2d 1].) However, these concerns do not appear applicable when, as here, the subsequent attorney seeks equitable indemnity against the former attorney. The former attorney is not subject to any conflict of interest and has no continuing privileged communications or work product to

protect. The only case of which we are aware that considered the factual pattern in which the subsequent attorney tortfeasor seeks indemnity from the original tortfeasor is *Munoz* v. *Davis* (1983) 141 Cal.App.3d 420 [190 Cal.Rptr. 400].

In *Munoz*, the client was injured in a collision between the car in which he was a passenger and the car driven by Davis. The client retained attorney Munoz to represent him, and Munoz committed malpractice by not filing a complaint against Davis within the statutory period. The client then sued Munoz for malpractice, and Munoz cross-complained against Davis for equitable indemnity, asserting that if Munoz were liable the underlying negligence of Davis in part caused the damages suffered by the client. (*Munoz* v. *Davis, supra,* 141 Cal.App.3d at p. 422.) The *Munoz* court relied on two rationales to conclude the negligent attorney was not entitled to indemnification from the defendant whose negligence caused the original injury and created the opportunity for the attorney malpractice. First, the *Munoz* court noted that equitable indemnity applies only when the prospective indemnitor is jointly and severally liable for the same injury as the prospective indemnitee. The *Munoz* court concluded the attorney's malpractice caused an injury distinct from the injury caused by the tortfeasor, and it would not impose a duty on the original tortfeasor for harm resulting when the client's legal claims were incompetently managed. (*Id.* at pp. 425-427.) Second, the *Munoz* court concluded it would be inequitable to shift malpractice liability from the negligent lawyer to the original tortfeasor because that shift of liability would negate the statute of limitations applicable to the victim's claim and make the original tortfeasor a malpractice insurer for the victim's subsequent attorney. The *Munoz* court also hypothesized that permitting indemnity would create irreconcilable obligations for the original tortfeasor's attorney who is obligated to protect the tortfeasor's interests. If the injured party's attorney committed malpractice and the party was then permitted to seek indemnity from the original tortfeasor, the original tortfeasor's attorney would face the dilemma of whether he should assist his adversary's counsel to assure the claim is timely filed, competently prosecuted and adequately compensated to preempt a later indemnity claim against his client, or whether he should represent only his client and thereby expose his client to a subsequent indemnity claim from the victim's attorney. (*Id.* at pp. 427-430.) Based on these concerns, the *Munoz* court concluded the subsequent attorney who is sued for malpractice is not entitled to equitable indemnity from the original tortfeasor whose conduct caused the personal injury and merely created the opportunity for the later malpractice.

Boatwright and Page seek to distinguish *Munoz* from this case, arguing that in *Munoz* the client suffered distinct injuries and here only a single

injury is involved. *Munoz* reasoned the losses were distinct because the original tortfeasor caused the client physical injury and the subsequent malpractice caused the client the distinct injury of loss of damages resulting from the physical injury. We find this case distinguishable from *Munoz* on that ground. In *Munoz,* the attorney and the original tortfeasor "were not jointly and severally liable to the plaintiff for the same injury because the connection between the negligent driver's act and the attorney's malpractice was too tenuous." (*W.W.S.M. Investors* v. *Greve, Clifford, Diepenbrock & Paras* (1996) 43 Cal.App.4th 517, 522 [51 Cal.Rptr.2d 31].) The negligence of the original tortfeasor did not cause or contribute to the subsequent malpractice of the attorney, and because there was no nexus between the conduct of the original tortfeasor and the attorney there was no joint and several liability between them for the two distinct injuries. (*Yamaha Motor Corp.* v. *Paseman* (1990) 219 Cal.App.3d 958, 969-970 [268 Cal.Rptr. 514]; *Platt* v. *Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439, 1445, fn. 7 [266 Cal.Rptr. 601].) In contrast to *Munoz,* in the instant case the alleged negligence of BPH before 1990 and of Page and Boatwright after March 1990 contributed to or solely caused the single injury to Crouse. (*Yamaha Motor Corp.* v. *Paseman, supra,* 219 Cal.App.3d at p. 970.)

Here, as in *Munoz,* the effect of allowing Boatwright and Page to obtain indemnity from BPH for part of the injury caused by Boatwright's and Page's post-March 1990 acts of malpractice would be to resurrect the liability of BPH otherwise barred by the statute of limitations. However, the fact an equitable indemnity claim in effect resurrects liability barred by the statute of limitations on the underlying claim does not preclude the equitable indemnity claim. (*People* ex rel. *Dept. of Transportation* v. *Superior Court, supra,* 26 Cal.3d at pp. 748, 752.)

We doubt that permitting equitable indemnity in this case creates ethical dilemmas for lawyers representing BPH. To avoid a resurrected claim, BPH's lawyers would have to protect Crouse from malpractice by her new attorneys. Arguably, this could force BPH's lawyers to advise Crouse's new attorneys timely to sue BPH for the original loss, and to oversee her new attorneys to assure that Crouse's claim against their own client was competently pursued and adequately compensated. However, at least in the context of this case, we are not persuaded that the dilemma is sufficiently real to overcome the general principles of *AMA.* In this case BPH was unaware the note was lost until after the aborted September 1990 closing. There was no opportunity for the ethical dilemma hypothetical posed by *Munoz.* Furthermore, had BPH assisted Page and Boatwright in the aborted closing, the

assistance may well have helped Crouse avoid injury and that assistance would have benefited BPH as well as Page and Boatwright.

We find *Munoz* inapplicable to this case and that the policy reasons prohibiting an indemnity claim by the original tortfeasor attorney against the subsequent attorney are not applicable to an indemnity claim by the subsequent attorney against the former attorney. We therefore conclude there is no reason not to apply the general principles of *AMA*, and Boatwright and Page may seek equitable partial indemnity for damages recovered by Crouse for Boatwright's and Page's alleged post-March 1990 acts of malpractice.

**D.** *Boatwright May Seek Equitable Indemnity From BPH to the Extent Boatwright Is Liable for Malpractice Occurring While Boatwright Was a Member of BPH*

Boatwright has an additional basis for equitable indemnity from BPH which is not shared with Page. Boatwright could be liable to Crouse for the alleged pre-1990 negligence in the loss of the note, and if BPH's negligence contributed to the loss of the note, BPH and Boatwright could be concurrent tortfeasors for the injury caused by loss of the note. (See generally, *AMA, supra,* 20 Cal.3d at pp. 586-588 [where the negligent acts of two tortfeasors are both a proximate cause of injury, each tortfeasor is jointly and severally liable as a concurrent tortfeasor].)

A jury could premise all or part of Boatwright's liability on his negligence in losing the note and could conclude that BPH was also negligent and that the negligence of both BPH and Boatwright proximately caused damage to Crouse. (Cf. *John B. Gunn Law Corp.* v. *Maynard* (1987) 189 Cal.App.3d 1565, 1570-1571 [235 Cal.Rptr. 180].) Having already concluded that Boatwright's equitable indemnity claim against BPH is not barred by the statute of limitations, and perceiving no other impediment to Boatwright's right to equitable indemnity from BPH under traditional *AMA* principles of equitable indemnity among concurrent tortfeasors whose acts of negligence unite to cause a single injury (*AMA, supra,* 20 Cal.3d at p. 598), we further conclude the trial court erred by granting summary adjudication in favor of BPH on Boatwright's equitable indemnity claim against BPH to the extent Boatwright and BPH were concurrent tortfeasors for pre-1990 acts.

**E.** *There Are Triable Issues of Fact on Boatwright's Claim for Breach of Implied Contract*

Boatwright's cross-complaint alleged that BPH, by not accepting his tender of the defense of Crouse's complaint and instead filing its own

indemnity claim against Boatwright, breached its implied contractual obligations to Boatwright. Boatwright alleged that BPH had a policy and practice of defending and indemnifying its current and former attorneys for liabilities incurred by its attorneys while acting on behalf of BPH and this policy and practice imposed an implied contractual obligation to defend and indemnify Boatwright against Crouse's claim.

### 1. *Procedural Background*

BPH's summary adjudication motion attacked Boatwright's claims for breach of implied contractual duties by arguing it owed no duty to indemnify or defend Boatwright for negligent conduct Boatwright committed while at Page. The motion alternately argued that any duty to indemnify or defend Boatwright for his liability based on his conduct while at BPH arose only after the trier of fact concluded Crouse was damaged by Boatwright's negligence while at BPH, and therefore Boatwright's contractual claim was premature. Boatwright's opposition noted his claim for breach of the implied contractual duty to defend and indemnify was based on BPH's alleged policy and practice of defending its employees for misconduct committed while employed by BPH, and argued that BPH's summary adjudication motion made no attempt to negate the existence of that policy. In reply, BPH asserted it had no policy or practice of defending or indemnifying its attorneys for their conduct taken on behalf of BPH.[7] To dispute that fact, Boatwright responded with (1) his own declaration stating that, based on BPH's history of providing support and defense for every attorney sued for malpractice for work done while at BPH, he understood that BPH had a policy of providing defense and indemnification to its attorneys, and (2) the deposition testimony of the managing partner of BPH's San Diego office, stating the managing partner understood that BPH generally provided defense and indemnification to its attorneys for their actions while at BPH.

### 2. *Analysis*

 Boatwright argues, and BPH does not dispute, that an implied contractual obligation to defend and indemnify arises if BPH had a continuing policy and practice of defending and indemnifying its attorneys for actions undertaken on behalf of the firm. (Cf. *Foley* v. *Interactive Data Corp.*

---

[7]The evidence on which BPH relied for this undisputed fact was its interrogatory responses stating there were "no such *written* policies and/or practices." (Italics added.) However, those same responses also admitted Boatwright was the first attorney ever sued by BPH for indemnity based on malpractice occurring while at BPH.

(1988) 47 Cal.3d 654, 677 [254 Cal.Rptr. 211, 765 P.2d 373]; *Walker* v. *Blue Cross of California* (1992) 4 Cal.App.4th 985, 993 [6 Cal.Rptr.2d 184].) BPH instead argues that because it produced evidence denying that the policy or practice existed, and Boatwright produced no evidence that any promises were made or policy or practice existed, summary judgment was appropriate.

Although BPH's evidence stated it had "no such *written* policies and/or practices" (italics added), implied contractual obligations can be created by informal, unwritten policies the employer has followed. (*Seubert* v. *McKesson Corp.* (1990) 223 Cal.App.3d 1514, 1520 [273 Cal.Rptr. 296]; *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 329 [171 Cal.Rptr. 917].) Boatwright's evidentiary showing included: (1) his own declaration stating he understood that BPH would defend and indemnify both present and former attorneys for malpractice suits for their actions while at BPH and that this understanding was based on BPH's consistent actions in always providing a defense and indemnification to its attorneys; and (2) the deposition admissions of the managing partner of BPH's San Diego office, stating he understood that BPH generally provided defense and indemnification for lawsuits against its attorneys involving allegations of malpractice while they were employed at BPH.

Because Boatwright's evidence most liberally construed creates a triable issue of material fact of the existence of BPH's policy to defend and indemnify, and BPH's evidence strictly construed shows only that there was no written policy, it was error to grant summary judgment in favor of BPH on Boatwright's claim for breach of an implied contractual obligation to defend and indemnify Boatwright against claims for liability based on his conduct while at BPH. (*Walker* v. *Blue Cross of California, supra,* 4 Cal.App.4th at p. 993.)

F. *The Trial Court Correctly Granted Summary Adjudication for BPH on Boatwright's Claim for Breach of Fiduciary Duty*

Boatwright's cross-complaint against BPH included a claim titled "Breach of Fiduciary Duty" that alleged Boatwright's partnership relationship with BPH gave rise to fiduciary obligations from BPH to Boatwright, and that BPH breached those duties by cross-complaining against Boatwright for indemnity rather than defending and indemnifying him.

We conclude the trial court correctly granted summary adjudication in favor of BPH on Boatwright's claim for breach of fiduciary duty.

The fiduciary duties owed among partners is not unlimited. "[T]his duty 'applies only to situations where one partner could take advantage of his position to reap personal profit or act to the partnership's detriment.'" (*Heller* v. *Pillsbury Madison & Sutro* (1996) 50 Cal.App.4th 1367, 1387 [58 Cal.Rptr.2d 336], quoting *Leigh* v. *Crescent Square, Ltd.* (1992) 80 Ohio App.3d 231 [608 N.E.2d 1166].) Applied to former partners like Boatwright, the continuing fiduciary duty which survives dissolution of the partnership is breached if the ex-partner attempts to divert partnership opportunities for his personal benefit to the detriment of his former partners (*Leff* v. *Gunter* (1983) 33 Cal.3d 508, 514 [189 Cal.Rptr. 377, 658 P.2d 740]) or when the remaining partners exclude the ex-partner from the benefits of an existing partnership opportunity (*Rosenfeld, Meyer & Susman* v. *Cohen* (1983) 146 Cal.App.3d 200, 218 [194 Cal.Rptr. 180], disapproved on other grounds in *Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 521, fn. 10 [28 Cal.Rptr.2d 475, 869 P.2d 454]; *Page* v. *Page* (1961) 55 Cal.2d 192, 197-198 [10 Cal.Rptr. 643, 359 P.2d 41]). BPH did not deprive Boatwright of his right as a former partner to share in partnership opportunities extant at the time he left the partnership. Because Boatwright cites no authority holding that former partners have ongoing fiduciary obligations beyond the duty to share the benefits of existing partnership business opportunities with their former partners, summary adjudication was appropriate. (*Regan Roofing Co.* v. *Superior Court* (1994) 24 Cal.App.4th 425, 434 [29 Cal.Rptr.2d 413].)

 Our conclusion that BPH did not owe, and therefore did not breach, any continuing fiduciary obligation as alleged by Boatwright is confirmed by case authority holding that BPH may engage in the precise activity (seeking indemnification from the negligent partner) which Boatwright argues is a violation of BPH's fiduciary obligations. ▮ When a partnership is held liable to a third party based on a partner's negligence, the partnership is entitled to seek indemnity from the partner whose negligence caused the loss. (*United States Fire Ins. Co.* v. *National Union Fire Ins. Co.* (1980) 107 Cal.App.3d 456, 468 [165 Cal.Rptr. 726]; *Orosco* v. *Sun-Diamond Corp.* (1997) 51 Cal.App.4th 1659, 1670 [60 Cal.Rptr.2d 179].) ▮ Because the right to seek indemnity from the former partner would be hollow if its pursuit exposed the partnership to damages for breach of fiduciary duty, we are convinced that pursuit of the indemnity action does not violate any fiduciary obligation BPH owed to Boatwright.

G. *The Statutory Indemnification Boatwright Sought Against BPH Is Duplicative of His Claims for Indemnity Under AMA Principles*

▮ Boatwright's cross-complaint against BPH asserted a claim for indemnity under Corporations Code section 15018, subdivision (b), which

provides: "The partnership must . . . indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him or her in the ordinary and proper conduct of its business . . . . ."

That section obligates the partnership to reimburse the paying partner to the extent he "has paid *more than his share* of partnership obligations . . . ." (*Kazanjian* v. *Rancho Estates, Ltd.* (1991) 235 Cal.App.3d 1621, 1627 [1 Cal.Rptr.2d 534], italics added.) However, because the partnership is entitled to indemnity from a negligent partner for partnership liabilities attributable to his negligence (*United States Fire Ins. Co.* v. *National Union Fire Ins. Co., supra,* 107 Cal.App.3d at p. 468), here Boatwright will not pay more than "his share" of the partnership obligations unless a jury holds him liable for the injury caused by the pre-1990 negligence *and* attributes some portion of the comparative fault for that injury to BPH employees or partners other than Boatwright. Although Boatwright would be entitled under those circumstances to indemnity from BPH pursuant to Corporations Code section 15018, subdivision (b), those same circumstances would also entitle Boatwright to partial equitable indemnity from BPH under *AMA* principles.

Because we have concluded that Boatwright's claim for indemnity under *AMA* principles for pre-1990 activities remains viable, and the statutory right appears indistinguishable from the rights conferred by *AMA*,[8] we conclude the trial court erroneously granted summary adjudication against Boatwright's statutory claim.

## DISPOSITION

The summary judgment in favor of Boatwright and Page against Crouse is reversed. Crouse is entitled to costs on appeal in appeal No. D026136. The summary judgment in favor of BPH against Crouse is affirmed. The order granting summary adjudication in favor of BPH on Boatwright's cause of action against BPH for breach of fiduciary duty is affirmed. The summary judgment in favor of BPH on Page's cause of action for equitable indemnity

---

[8]Boatwright argues the statutory right is distinct from the rights under *AMA* because the statutory right includes the right to recover his costs incurred in defending against Crouse's complaint. Boatwright would be entitled to defense costs in connection with his *AMA* claim only if he prevailed on his claim for implied indemnity and was determined to be free from fault vis-à-vis the damages Crouse suffered from loss of the note. (§ 1021.6.) However, Corporations Code section 15018, subdivision (b) does not expressly confer any greater right on Boatwright to recover his fees. Boatwright cites Civil Code section 2778, subdivisions (3) and (4) as authorizing recovery of his fees, but those subdivisions are inapplicable because they address the interpretation of the scope of express contractual indemnity agreements, not statutorily imposed indemnity obligations.

and the orders granting summary adjudication in favor of BPH on Boatwright's causes of action for equitable indemnity, breach of implied contractual duty and statutory indemnity are reversed, and those causes of action are remanded for further proceedings consistent with this opinion. BPH shall recover costs on appeal against Crouse in appeal No. D025143, and Boatwright and Page shall recover costs on appeal against BPH in appeal No. D025143.

Kremer, P. J., and McIntyre, J., concurred.

A petition for a rehearing was denied December 23, 1998, and the petition of respondent Brobeck, Phleger & Harrison for review by the Supreme Court was denied February 17, 1999.