[No. D020098. Fourth Dist., Div. One. Apr. 25, 1994.]

REGAN ROOFING COMPANY, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
PACIFIC SCENE et al., Real Parties in Interest.

426

428

**COUNSEL**

McInnis, Fitzgerald, Rees & Sharkey, Timothy S. Thomas, Jeff G. Harmeyer, Stutz, Gallagher, Artiano, Shinoff & Holtz, Daniel R. Shinoff, Robert R. Templeton, Jr., and Richard C. Thomas for Petitioners.

No appearance for Respondent.

Lorber, Volk, Greenfield & Blick, Bruce W. Lorber, M. Bart Beddoe, Jeffrey A. Garofalo, Epsten & Grinnell and Duane E. Shinnick for Real Parties in Interest.

**OPINION**

**HUFFMAN, J.**—Petitioner Regan Roofing Company, Inc. (Regan Roofing), joined by New Continental Tile and Marble Company, Inc. (New

Continental), brings this petition for writ of mandate to challenge the order of the trial court summarily adjudicating certain issues in this cross-action for contractual indemnity and related theories brought by Pacific Scene et al. (collectively, Pacific Scene), the developer of the Pacific Ridge condominium project, which is claimed to suffer construction defects. (Code Civ. Proc., § 437c, subd. (f).)[1] Regan Roofing and New Continental, among others, were subcontractors in various trades who worked on the construction of the project, pursuant to subcontracts which each contained an indemnity provision in favor of Pacific Scene. In its ruling, the trial court summarily adjudicated the issue that the indemnity provision contained in the exemplar subcontract agreement was a "specific" or "type I" indemnity agreement, which would cover the general contractor's, Pacific Scene's, own negligence in the construction of the project. (See *MacDonald & Kruse, Inc. v. San Jose Steel Co.* (1972) 29 Cal.App.3d 413, 419-421 [105 Cal.Rptr. 725].) The trial court also ruled that the subcontractor cross-defendants had a current duty to defend Pacific Scene regardless of any determination of their duty to indemnify it under the subcontracts.

Regan Roofing[2] makes both procedural and substantive arguments that this ruling was improper. It first claims this ruling was not a proper subject of summary adjudication under section 437c, subdivision (f), because it does not completely dispose of any cause of action or defense of the cross-complaint, nor is it a proper adjudication of an issue of duty owed by cross-defendants to the cross-complainants, as allowed by the statute. In its substantive attack on the ruling, Regan claims the trial court improperly equated contractual indemnitors, such as these subcontractors, with insurance companies, thus improperly expanding the duty to defend; Regan Roofing also claims the trial court incorrectly construed this indemnity clause as providing specific indemnity. We decline to reach these substantive arguments, as this petition for writ of mandate is properly disposed of on the procedural grounds asserted. We explain.

### FACTUAL AND PROCEDURAL BACKGROUND

As pled in the petition, Pacific Ridge Condominium Association (the Association) brought suit against Pacific Scene for breach of implied warranties, strict liability, and negligence arising out of construction defects at the project. Pacific Scene filed a cross-complaint for express indemnity, breach of contract, implied indemnity, equitable indemnity, contribution, and declaratory relief against a number of subcontractors who worked at the project, each of which had agreed to a contractual indemnity clause as part

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.
[2] We shall refer to the petitioners jointly as Regan Roofing.

of its subcontract. Pacific Scene then brought a motion for summary adjudication under section 437c, subdivision (f), specifying the following two issues for resolution:

"1. *Issue: Whether the Indemnity Provision Included Within the Construction Subcontract Agreement Entered Into Between [Pacific Scene] and Subcontractor/ Cross-defendants Is a 'Type I' or a 'Specific' Indemnity Agreement of Which Pacific Scene Is a Beneficiary.*

"2. *Issue: Whether Contractor/Cross-defendants Owe Pacific Scene the Duty of Defense, Pursuant to the Construction Subcontract Entered Into, by and Between, [Pacific Scene], and Subcontractors/Cross-Defendants.*" (Original italics.)

In support of its motion, Pacific Scene submitted an exemplar construction subcontract, containing an indemnity clause as follows:

"Q. Indemnity—Subcontractor shall at all times indemnify and hold Contractor harmless as follows:

" (i)   Subcontractor shall indemnify and hold harmless Contractor against all liability for claims or liens for labor performed, or materials used or furnished to be used on the job by or through Subcontractor;

" (ii) *Subcontractor shall indemnify* and *hold harmless* Contractor against any *other liability, cost or expense* of any *nature or kind arising* out of or *in any way* connected with Subcontractor's performance of this Subcontract, *save and except only such liability, cost or expense caused by Contractor's sole negligence or sole willful misconduct.*

"Pursuant to each of the foregoing, Subcontractor shall *indemnify* and hold harmless *Contractor from any costs and expenses for attorney's fees and all incidental and consequential damages resulting to Contractor from such claims or liens.* In the event any suit on any claim is brought against Contractor, subject to the provision, Subcontractor *shall defend* said suit at *Subcontractor's own cost and expense and will pay and satisfy any such lien or judgment as may be established by the decision of the Court in such suit. . . .*" (Italics added.)

Pacific Scene also supplied the court with an exemplar tender of defense letter to one of the subcontractors, requesting it to defend and indemnify Pacific Scene for any loss resulting from the Association's lawsuit. Pacific Scene represented that to date the subcontractors had all rejected this demand for defense and indemnification.

There were 24 subcontractors/cross-defendants named in the motion; the exhibits to the petition show that 12 of those filed opposition. These were A-Built Raingutters; Kenwall Fireplaces; Sunwood Co.; Aero-Crete, Inc.; Jim Best Construction; Ty's Plumbing Co.; Alcala Co.; American Best Distributors, Inc.; New Continental; S. C. Insulation; Regan Roofing and Pacific Structural Concrete. The opposition generally argued that the motion did not dispose of any complete cause of action or defense and, further, that triable issues of material fact existed as to the stated issues. Mike Regan, a principal of Regan Roofing, submitted a declaration asserting that during contract negotiations, the indemnity provision had not been brought to his attention, nor did he understand it or have an opportunity to negotiate its terms. Another subcontractor, S. C. Insulation, asserted that the exemplar subcontract did not apply to it, as it had never signed it, nor had it received the exemplar tender letter.

Pacific Scene filed reply papers asking the court to rule that the exemplar indemnity provision was type I, allowing Pacific Scene indemnity and defense from the subcontractors as a matter of law, covering its own negligence if any.

At oral argument, the court expressed its opinion that the contract of indemnity was the functional equivalent of a contract of insurance, that the duty to defend was independent of any eventual determination of the duty to indemnify, and that the indemnitors might have to pay defense costs whether or not they were ultimately found liable for their own negligence. The court then issued its ruling, summarized by Pacific Scene in its notice of ruling as follows:

"Motion for Summary Adjudication by defendants, Pacific Scene et al. granted in part and denied in part.

"As a matter of law, the indemnity provision, Subsection Q, contained in the exemplar contract attached as Exhibit 1 is a specific or 'Type I' indemnity provision as it expressly refers to the negligence of the contractor. See the case of *C.I. Engineers & Constructors* v. *Johnson & Turner Painting* (1983) 140 CA3d 1011, 1014 [189 Cal.Rptr. 824].

"However, since defendants have not provided credible evidence that this exact contract was executed by each and every one of the named subcontractors, the Court is not adjudicating the duties, rights and/or liability as it pertains to each individual subcontractor.

"Further, the Court finds that the motion is premature as to the duty to indemnify as Pacific Scene would not be entitled to recover under any

indemnity provisions until becoming liable and/or suffering an actual loss by being compelled to pay a claim. See Civil Code Section 2778(1) and (2). There is no evidence that Pacific Scene has suffered a compensable loss.

"The Court does find that there is a duty to defend under Civil Code Section 2778. Section 2778(3) provides that an indemnity against claims, demands or liability embraces the cost of defense. Pursuant to Civil Code Section 2778(4), the indemnitors [the subcontractors] are bound, on request of the indemnitee [Pacific Scene], to defend actions brought against the indemnitee in respect to matters embraced by the indemnity clause. The Court finds that the exemplar subcontract allegedly entered into between each of the named subcontractors and [Pacific Scene] contains an indemnity clause at Paragraph Q which embraces the costs of defense. . . . Further, this action, which includes a claim for damages arising from work performed by the subcontractors pursuant to the subcontract, is embraced by that indemnity clause. . . .

"Finally, adjudication of the issue regarding primary carriers is denied as improper under CCP 437c(f). Further, there is no argument or evidence presented to support adjudication of this issue."[3]

This writ petition followed and we issued an order to show cause and an order staying the trial date.

## DISCUSSION

Regan Roofing has raised a number of interesting substantive questions concerning the scope of a duty to defend arising from a contractual indemnification clause, as opposed to a contract of insurance, and has additionally argued that the trial court incorrectly construed the subject indemnity provision as providing specific indemnification. ■ The dispositive issue presented by the petition, however, concerns the proper interpretation of the summary adjudication statute, section 437c, subdivision (f), as to the type of issue of duty which may be summarily adjudicated. We shall discuss the substantive issues raised only within the context of deciding whether they were, as the trial court ruled, proper subjects of summary adjudication at all.

■ Section 437c, subdivision (f)(1), as amended in 1990 and 1993, provides in full as follows: "(f)(1) A party may move for summary adjudication as to one or more causes of action within an action, one or more affirmative defenses, one or more claims for damages, *or one or more issues of duty,* if that party contends that the cause of action has no merit or that

___

[3]Pacific Scene's motion had presented as a subsidiary issue whether the subcontractors' insurance carriers should be considered primary.

there is no affirmative defense thereto, or that there is no merit to an affirmative defense as to any cause of action, or both, or that there is no merit to a claim for damages, as specified in Section 3294 of the Civil Code, *or that one or more defendants either owed or did not owe a duty to the plaintiff or plaintiffs.* A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, *or an issue of duty.*" (Italics added.)

In *City of Emeryville* v. *Superior Court* (1991) 2 Cal.App.4th 21, 25 [2 Cal.Rptr.2d 826], the court interpreted section 437c, subdivision (f) in light of its legislative history:

"Section 1 of Statutes 1990, chapter 1561, explained the intent behind the change in subdivision (f): 'It is also the intent of this legislation to stop the practice of adjudication of facts or adjudication of issues that do not completely dispose of a cause of action or a defense.'

"This statement and the wording of subdivision (f) show clearly that the Legislature wished to narrow summary adjudication from its broad focus on 'issues' (sometimes interpreted to mean only asserted 'facts') to a more limited focus on causes of action, affirmative defenses, claims for punitive damages, and claims that defendants did not owe plaintiffs a duty." (*City of Emeryville* v. *Superior Court, supra,* 2 Cal.App.4th at p. 25.)[4]

In *Lilienthal & Fowler* v. *Superior Court* (1993) 12 Cal.App.4th 1848, 1853-1854 [16 Cal.Rptr.2d 458], the court interpreted section 437c, subdivision (f) as creating a means to eliminate those summary adjudication motions that would not reduce the costs and length of litigation. Such an interpretation is in accord with the general policy behind motions for summary judgment or adjudication, i.e., to " 'promote and protect the administration of justice, and to expedite litigation by the elimination of needless trials.' [Citations.]" (*Lilienthal & Fowler* v. *Superior Court, supra,* 12 Cal.App.4th at p. 1854.) The court thus held that "the time and cost saving purposes of the amendment" (*ibid.*) did not authorize a ruling which would allow a cause of action in its entirety to proceed to trial where a separately alleged obligation or claim within that cause of action could be summarily defeated by summary adjudication. ▮ In light of this authority, we should analyze the trial court's ruling on the summary adjudication motion

---

[4]At oral argument, Pacific Scene requested judicial notice of various legislative history materials concerning section 437c, subdivision (f). (Evid. Code, §§ 452, subd. (c), 459, subd. (a).) We granted the request and offered Regan Roofing an opportunity to respond. We had previously reviewed these materials in our independent research in preparing this opinion and do not find them dispositive on the particular issue presented. (See, e.g., *Beech Aircraft Corp.* v. *Superior Court* (1976) 61 Cal.App.3d 501, 515-517 [132 Cal.Rptr. 541].)

with a view to whether it promotes the evident legislative purpose of section 437c, subdivision (f), to prevent adjudication of issues which fail to dispose completely of a particular cause of action or defense, even where "an issue of duty" is involved. (§ 437c, subd. (f).)

■ The Legislature did not define what it meant by "an issue of duty" in section 437c, subdivision (f). Where a tort duty is involved, as in a negligence cause of action, a finding that a defendant does not owe a duty to the plaintiff may effectively terminate an action or a portion thereof and is thus clearly an example of a proper subject of summary adjudication.[5]

In actions arising out of contract, such as this action for contractual indemnity, the concept of duty is more far-reaching. Williston on Contracts (4th ed. 1990) section 1:1, pages 2-3, explains that the Restatement Second of Contracts defines the term "contract" "as a promise or set of promises for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." (*Ibid.*, fn. omitted.) The term "contract" refers to "those promises which the law recognizes as creating a duty of performance." (*Id.* at p. 4.) In defining the contractual concept of "promise," the treatise writers explain that although that term was once defined as an undertaking that something shall or shall not happen in the future, the term "promise" is used in the treatise "to include not only the physical manifestations of assurance by words or conduct, but also the moral duty to make good the assurance by performance. If, by reason of other operative facts, the promise is recognized as creating a legal duty, or if its breach will give rise to a right of redress, then the promise is a contract." (*Id.*, § 1:2, p. 9, fns. omitted.) It will thus be seen that the concept of duty in contract law may refer both to an overall contractual obligation or to a requirement of performance under an agreement. (See 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 775, p. 701 [If impossibility of performance exists at the time an agreement is made, "no duty, i.e., no binding contract, arises. [Citations.]" (Italics omitted.)].) The concept of duty thus enters into the first three of the standard elements of a cause of action for breach of contract: (1) the contract, (2) plaintiff's performance or excuse for

---

[5]The standard elements of a cause of action for negligence are (1) the defendant's legal duty of care toward the plaintiff, (2) the defendant's breach of that duty by negligent act or omission, (3) injury to the plaintiff due to the breach, shown by proximate or legal cause, and (4) damage to the plaintiff. (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 527, p. 558.) Commentators have suggested an example of a proper summary adjudication of an issue of duty in the negligence context: "A negligence action may be based on both the general duty of due care and specific statutory duties. Defendant may seek summary adjudication it did not owe a certain statutory duty without disposing of the action based on the general duty of due care." (Weil & Brown, Civil Procedure Before Trial (The Rutter Group 1993) ¶ 10:44.3, p. 10-15.)

nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom. (4 Witkin, Cal. Procedure, *op. cit. supra*, Pleading, § 464, p. 504.)

In the context of insurance contract law, it is well established that a duty to defend is contractual in nature (*Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 791 [244 Cal.Rptr. 655, 750 P.2d 297]) and determination of such a duty is a matter of law appropriate for summary adjudication. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 298-301 [24 Cal.Rptr.2d 467, 861 P.2d 1153]; *California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 38 [221 Cal.Rptr. 171].) Interpretation of an insurance policy is a question of law for the court. (*Ibid.*) Where such a summary adjudication of the duty to defend is made in a declaratory relief action, the entire action may be effectively terminated and summary adjudication thus achieves the policy goals of section 437c, subdivision (f). (*Montrose Chemical Corp. v. Superior Court, supra*, 6 Cal.4th at pp. 298-299; *State Farm Fire & Casualty Co. v. Eddy* (1990) 218 Cal.App.3d 958, 964-966 [267 Cal.Rptr. 379].) For example, commentators have suggested an example in the insurance context where summary adjudication of a defendant's duty to plaintiffs might be appropriate: "For example, Insurer sues for declaratory relief that it owes no *duty to defend or to indemnify* its Insured for certain wrongful acts. These duties are not identical (the duty to defend is broader than the duty to indemnify). Thus, the court could grant summary adjudication that Insurer has no duty to *indemnify*; and at the same time determine there is a triable issue as to duty to defend." (Weil & Brown, Civil Procedure Before Trial (The Rutter Group 1993) ¶ 10:44.2, p. 10-15, original italics.)

With this theoretical background in mind, we first discuss whether the trial court properly summarily adjudicated that there was a duty to defend in this contractual indemnity context, where a broad scope of relief (more than just declaratory relief) is sought. We then address the portion of the ruling defining the type of indemnity provision from which any alleged duties arose (i.e., specific indemnity). As to both topics, we reiterate that although Pacific Scene's cross-complaint evidently seeks declaratory relief, it also seeks damages and other relief regarding the contractual indemnity provision and related theories.[6] In its ruling, the trial court expressly stated that it was not adjudicating the specific contractual duties, rights, and/or liability as pertaining to each individual subcontractor, as it was not clear

---

[6]At oral argument, counsel for Pacific Scene suggested that if Pacific Scene's cross-complaint were amended to state a single claim for declaratory relief, summary adjudication of the duty to defend would be proper. However, in this proceeding, we are required to take the pleadings as we find them; in any case, as we will explain, there are unresolved issues as to the scope of this particular indemnity clause.

that each of them had signed the same exemplar subcontract. The ruling on summary adjudication is thus essentially an interpretation of contract provisions and has certain advisory qualities, as it does not dispose of an entire cause of action or affirmative defense, nor does it terminate any portion of the action with its determination of an issue of duty. (See *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 170-171 [188 Cal.Rptr. 104, 655 P.2d 306].)

Thus, regarding the duty to defend, although the ruling attempts to resolve certain elements of the cause of action for breach of contract provisions, i.e., those concerning the nature of the contract and possibly the plaintiff's performance or excuse for nonperformance, it leaves unresolved the issues of the cross-defendants' breach and the cross-complainant's damages. The indemnity clause requires the subcontractor to hold the general contractor harmless "against any other liability, cost or expense of any nature or kind *arising out of or in any way connected with Subcontractor's performance* of this Subcontract." (Italics added.) Civil Code section 2778 provides rules for interpreting an agreement of indemnity which are to be applied unless a contrary intention appears; subdivision 4 of that section provides: "The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter *in respect to the matters embraced by the indemnity*, but the person indemnified has the right to conduct such defenses, if he chooses to do so." (Italics added.) The "matters embraced by the indemnity" (Civ. Code, § 2778, subd. 4) in this case are tied by the indemnity clause to those liabilities or expenses connected with the subcontractor's performance of the subcontract (excepting liabilities or expenses caused by the general contractor's sole negligence or sole willful misconduct).

We believe summary adjudication of the duty to defend and its relationship to the duty to indemnify (i.e., the scope of "the matters embraced by the indemnity") is premature. No determination has yet been made as to whether the subcontractors were negligent in the performance of their work, giving rise to a duty to indemnify and a related duty to defend. Pacific Scene has not clearly established that under this indemnity clause, the duty to defend against claims of liability is entirely free-standing of the duty to indemnify for liability arising out of a subcontractor's negligence. (Civ. Code, § 2778, subd. 4.) ■ While an insurance company has a broad duty to defend, due to the possibility of coverage under the policy, a contract of indemnity is not construed in precisely the same manner as is an insurance contract, because it is not necessarily an adhesion contract as is an insurance policy. (*Goldman* v. *Ecco-Phoenix Elec. Corp.* (1964) 62 Cal.2d 40, 49 [41 Cal.Rptr. 73, 396 P.2d 377].) ■ It is as yet unclear whether the subcontractors

are being expected to defend the developer, Pacific Scene, against claims for which it may be strictly liable, but for which the subcontractors are not strictly liable. (*La Jolla Village Homeowners' Assn.* v. *Superior Court* (1989) 212 Cal.App.3d 1131, 1144 [261 Cal.Rptr. 146]; *GEM Developers* v. *Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 429-430 [261 Cal.Rptr. 626].)

██ Moreover, as a practical matter, the ruling does not finally resolve the duty to defend issue. Since there are approximately 24 subcontractors, each of whom performed work on a different phase or area of construction, their duty to defend is apparently limited by the clause to the issues concerning the type of work they did; Pacific Scene thus seeks to have a series of related defenses provided. While such a fragmented duty to defend poses no particular problems with regard to any ultimate division of the costs of defense, as part of the indemnification duty, it does pose practical problems for an immediate or current duty to defend (or to pay pro rata for another's defense) up to and including trial. There has been as yet no determination of any breach of this duty, which would allow the consequences of a failure to defend to be made clear.[7] The ruling is thus preliminary or advisory in character, and does not fully dispose of any portion of the action; it is inconsistent with the legislative intent of section 437c, subdivision (f). (*City of Emeryville* v. *Superior Court, supra,* 2 Cal.App.4th at p. 25.)

With respect to the trial court's labeling of the subject indemnity provision as type I, as opposed to a general indemnity clause, that ruling again is essentially advisory in nature and is premature in the sense that other elements of the breach of indemnity contract cause of action (cross-complainant's, performance or excuse from performance, breach and damages) remain unresolved. ██ Although a trial court is authorized to interpret a contractual provision as a matter of law (*Hillman* v. *Leland E. Burns, Inc.* (1989) 209 Cal.App.3d 860, 866-867 [257 Cal.Rptr. 535]), where such interpretation of contractual duties does not fully dispose of any portion of the action, it is not a proper subject of summary adjudication.

In conclusion, this court is not prepared to say that outside the insurance context there may never be an appropriate summary adjudication of a

---

[7]Regan Roofing is evidently arguing that by defending itself against Pacific Scene's cross-complaint, it is impliedly also defending Pacific Scene against the Association's negligence claims and thus is somehow already providing a defense to Pacific Scene under the indemnity clause. However, Pacific Scene's motion apparently sought a more direct performance of the duty to defend, apparently as to all of the Association's claims, including strict liability. At least, the requested ruling on the motion would serve to place considerable settlement pressure on the subcontractors. We are deciding this petition solely on statutory grounds, however.

particular contractual duty. We are, however, convinced that this ruling is not an appropriate summary adjudication, and that it creates more problems than it solves in the litigation. We accordingly grant the petition for writ of mandate to require the trial court to vacate its ruling granting in part the motion for summary adjudication.

### DISPOSITION

Petition granted. Let a writ of mandate issue directing respondent court to vacate its order granting in part the summary adjudication motion and enter a new order denying the motion in full. The stay of trial is vacated and the parties may seek a new trial date. This opinion shall become final as to this court 10 days after it is filed. (Cal. Rules of Court, rule 24(d).)

Todd, Acting P. J., and Froehlich, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied July 14, 1994.